GLENS FALLS INSURANCE COM-
PANY, a corporation, Appellant,

v.

Clifford N. SATREE et al., Appellees.

No. 17557.

United States Court of Appeals
Ninth Circuit.

July 16, 1963.

Rehearing Denied Aug. 28, 1963.

Miller, Williams & Larson, Daniel C. Miller, Frank Bowen, San Francisco, Cal., for appellant.

Walkup & Downing, Cyril Viadro, Bronson, Bronson & McKinnon, San Francisco, Cal., for appellees Moradian et al.

Before CHAMBERS, JERTBERG and KOELSCH, Circuit Judges.

CHAMBERS, Circuit Judge.

Joyner, driving a used Oldsmobile car purchased in April, 1959, from Satree, was involved in an automobile collision in Pacheco Pass, Merced County, California, on January 24, 1960, with the Wetzes and Moradians. The California title document for a transfer of the car, after some delay, had been placed in the hands of Joyner before the date of the accident. But no transfer had been effected.[1] The Moradians and the Wetzes have filed in California state courts suits against Joyner and Satree. All parties are in agreement that under California law in such circumstances of non-transfer Satree, the seller, has exactly the same liability as Joyner. The demands of the Wetzes and Moradians run to almost three hundred thousand dollars.[2]

At the time of the accident, Satree had a sort of junior grade fleet policy No. 14–92–87, with public liability and other coverages, issued for one year as of October 16, 1959, by appellant Glens Falls. It was a renewal of a 1958 policy, No. 14–33–36, which was in turn a renewal of a 1957 policy, No. 13–80–96. There were other prior policies, too. The policies covered all automobiles of Satree. The premium payment plan seems to have been that at the outset of the term an estimated premium would be specified and paid. At the end of the term Satree's premium would be calculated after an interview with Satree and an audit of his records by Glens Falls. And then Satree would be billed for payment. This audit was provided for in the policies and each year the audit appears to have called for a small upward adjustment.

On November 10, 1959, Glens Falls audited Satree specifically for his 1958 policy, which expired October 16, 1959. Satree had had the Oldsmobile automobile in his possession as owner from December, 1958, to April, 1959, when, as above indicated, he sold it to Joyner. The audit did disclose one car not previously listed, but did not disclose the existence of the Oldsmobile or anything else from which Glens Falls might know it had a possible liability for driving acts of Satree or Joyner with respect to it.

On August 26, 1960, Glens Falls, asserting diversity jurisdiction with over $10,000 in controversy, filed an action with three counts against the appellees named in the caption herein and one oth-

---

1. The California title document issued to owners by the Motor Vehicle Department is called a "pink slip." The old pink slip, when turned over by Satree to Joyner in contemplation of transfer, indicated that a new pink slip to be issued should show Joyner as registered owner and Satree as legal owner. However, there was no conditional sale contract or chattel mortgage. The car was purchased by Joyner on a nothing-down basis. He gave Satree his note for the purchase price. The note had been partially paid when the accident occurred. The record indicates that, although not officially approved, it is a practice of some used car dealers in California to withhold the pink slip for a while, as a sort of home-made security device. It is a permissible inference, but not a necessary one, that that was what happened here.

2. If responsible at all, Glens Falls liability limits would probably satisfy the demands.

er. The first count was for declaratory relief. The second was for rescission of the 1959 policy, and the third was for an accounting against Satree for further premiums it asserted were due but unascertained under the 1957 and 1958 policies. No effort was made to rescind the last two mentioned policies. It is fair to say, we believe, that under the 1957 and 1958 policies Glens Falls had been exposed to some liability on cars passing through the hands of Satree of which it had no express notice and received no premiums.

Satree had been a used car dealer. However, during 1958 and 1959 his operation as such was curtailed and he apparently was slowly getting out of the business. His operation of liquidating is called in the trade a "run-off."

As a ground to rescind or escape liability under its October 16, 1959, policy, Glens Falls asserted that their audit on November 10, 1959, failed to disclose the existence or ownership of the 1951 Satree-Joyner Oldsmobile and several others for which they therefore received no premiums on the policy written in October, 1958. This, it was said, was part of a scheme to defraud Glens Falls.[3]

After a trial before the court, the judge found for the defendants, made findings of fact and conclusions of law and entered judgment for defendants. The third count for the accounting as to Satree was dismissed on jurisdictional grounds—in essence, no showing of requisite ten thousand dollars in controversy.

■ As to the third count, we see no basis for the dismissal. If nothing else this count could hang on the other causes of action which involved far in excess of $10,000. Pearson v. National Society of Public Accountants, 5 Cir., 200 F.2d 897. If it had to stand on its own feet, then appellant is right when it says it was given no opportunity to meet the jurisdictional issue.

As to the first and second counts— declaratory judgment and rescission— we find further trouble. Glens Falls, in our opinion, is correct that if there was real fraud or fraudulent concealment by Satree in connection with at least the last two predecessor policies and the 1959 policy, it would be entitled to rescind the last or 1959 renewal. Certainly the policies constituted a chain or a course— more than an annual fall purchase of a new suit of clothes from the same dealer. Cf. Solomon v. Federal Insurance Co., 176 Cal. 133, 167 P. 859. And, on a series of blanket policies the trial court would not be restricted to gunsight vision in focusing on the last policy or the 1951 Oldsmobile. Appellees argue with some force that the trial court has by its findings found no fraud any time, any place. We find the findings confusing. The key finding, No. 14, is:

"The defendant Satree did not enter into any scheme or design to, and did not, defraud the plaintiff herein. The defendant Satree did not fail to report or disclose his interests in or ownership of any automobiles covered by said insurance policy. The defendant Satree did not fraudulently or otherwise conceal any such interests or ownership. The defendant Satree was not obligated or required to report or communicate to plaintiff his ownership of or interests in any automobiles covered by said insurance policy until the end of said policy period.[4] At the time of the issuance of said policy and all times during said policy period the plaintiff knew of the nature of defendant Satree's business and operations and

---

3. It would appear that the annual audits probably only picked up an automobile or two which Satree or members of his family had been using during the term. Certainly very few, if any, of the automobiles which had been the subject of Satree's "run-off" business were uncovered, although many of such automobiles

were definitely covered by the terms of the policy.

4. It is inescapable that Satree was required to report at the time of the annual audits cars not expressly identified in the policy. If some were missing, the question is, Was there any excuse?

knew or should have known that he owned or would acquire ownership of various automobiles during said period by reason of such business and operations and by means of repossession procedures. The plaintiff was not deceived, misled, prejudiced, injured or damaged by reason of any acts, conduct or omissions of defendant Satree. At all times during said policy period defendant Satree acted in good faith toward plaintiff.[5] Defendant Satree did not fail to communicate to plaintiff any fact which was material or which he believed to be material to said insurance policy. At all times during said policy period plaintiff had ample means of ascertaining all facts material to said insurance policy, but plaintiff failed to use such means to ascertain said facts [as of October 16, 1959]."

■■ The defendants below seem to have made little objection as to materiality of evidence intended to show fraud as to the earlier policies, and we think such evidence not unduly remote was admissible. Throughout, one observes the trial court's attitude, which is disclosed at least twenty times in the transcript, that Glens Falls' only recourse for non-disclosure of an automobile by Satree was to recover the additional premium (apparently) in some other action.[6]

In advance of trial, plaintiff tried to develop a list of cars for which no premiums had been paid by a request to Satree for admissions with respect to owned and possessed automobiles for the years of the 1957 and 1958 policies. The response is an elusive one—obviously Satree could have given more information than he did in his responses. But before trial, Glens Falls made no effort to compel Satree to clear up his response. Unlike Glens Falls, we are unable to take the

response as admitting anything. But Glens Falls was entitled to prove its count three, and that might have shown what, if anything, Satree failed to disclose. In turn, that would have put the asserted right to rescind of the second count in proper focus. Such evidence might well vitiate part of finding No. 14.

■■ Satree was permitted to answer, as a witness, that in 1957–1958 he thought he did have an ownership interest in 38 automobiles—far more than ever disclosed. This was not at too remote a time, but Glens Falls was not really permitted to go any further. The trial court's attitude from beginning to end is summed up in a statement midway as follows:

"The Court: But it isn't twenty cars here that are involved in this transaction; it is only this Oldsmobile. He might have been as fraudulent as the mischief with respect to nineteen cars and if he wasn't fraudulent with respect to this car it wouldn't have made any difference so far as the liability of this car is concerned. It might have made a difference so far as the accounting is concerned."

\* \* \* \* \* \*

"The Court: What good is it going to do to have a rescission with respect to sixteen or seventeen automobiles when the only question that would be involved in those would be as to whether or not the premium was paid."

We are fully aware of the rule that ordinarily a judgment supersedes any conflict in findings, and findings supplant any conflict in ad lib talk of the trial court. But here the case obviously was tried on the wrong theory. Holding as we do that evidence of fraud at unremote times was material, we think the findings really

---

5. Such a finding on good faith can be better considered when plaintiff-appellant is permitted to prove what cars (and the circumstances) were not reported.

6. Finding 14 does not very well reflect the trial court's theory of the case. The

findings were prepared by defendants and approved without a single change by the court. When they were signed they became just as much the court's findings as if the judge had prepared them himself.

point mainly to the 1959 policy to the exclusion of the two predecessors, although it may be argued the findings are broader.

We have reviewed all of the California insurance sections and cases cited by the parties, but do not propose to write a treatise on the subject. Were we concerned with the possibility that only one car had been overlooked, we might accept the court's findings. Also, we would think it rather important (maybe not conclusive) to resolve the conflict as to when the pink slip (title document) was delivered to Joyner.[7]

The statement signed by Satree for Glens Falls on November 10, 1959, on the occasion of the audit looks pretty bad.[8] As to his state of mind, it may make a difference as to whether Satree had several automobiles in his possession during 1958 and 1959 which were not disclosed, and whether he held several "pink slips" in his hands on automobiles he had sold. One stray might be of little moment. This is not to say that the Wetzes and Moradians must suffer if there were really substantial matters in the course of Glens Falls dealings on the policies which, in proper perspective, may have removed its right to rely on Satree's disclosures. On a retrial, Glens Falls may never be able to get the case beyond a question of fact, and again it may. It will be time enough to rule on that when the case has been tried on the correct theory.[9]

The trial court found laches on the part of Glens Falls. That is difficult to perceive at any time after November 10, 1959. One can tell whether such a principle applies at all when the earlier facts are developed.

The judgment is reversed for further proceedings consistent with this opinion.

7. Joyner said December; Satree said October.

8. Also, plaintiff Glens Falls asserts with some force a concealment as to nature of business.

JERTBERG, Circuit Judge (concurring in part and dissenting in part).

I concur in that part of the majority opinion holding that the District Court erred in granting a judgment of dismissal on the third cause of action set forth in plaintiff's (appellant's) complaint. In respect to the causes of action in the complaint seeking declaratory relief and rescission, I would affirm the judgment thereon entered by the District Court.

9. A real definitive pre-trial order would have been of some help in the case.