**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Plaintiff,**

**v.**

**FEDERAL DEPOSIT INSURANCE CORPORATION, et al., Defendants.**

**No. C 86–4018.**

United States District Court, N.D. Iowa, W.D.

March 11, 1987.

David R. Crary, Sioux City, Iowa, David M. Gische, Charles I. Hadden, Washington, D.C., for plaintiff.

Robert V. Ginn, Mark J. Daly, John K. Green, Marybeth Frankman, Omaha, Neb., Bruce J. Pederson, Washington, D.C., Thaddeus G. Fenton, West Des Moines, Iowa, for defendant FDIC.

Dan Connell, Storm Lake, Iowa, for defendant Jensen.

Marvin Heidman, Gregg E. Williams, Sioux City, Iowa, for defendant Hanson.

John H. Cook, John H. Cook, Jr., Cherokee, Iowa, for defendant Peterson and Gustafson.

John J. Greer, Michael R. Bovee, Spencer, Iowa, for defendants Christensen, Christensen, Jr. and Wieland.

Thaddeus Cosgrove, Holstein, Iowa, for defendant Sjoberg.

## ORDER

DONALD E. O'BRIEN, Chief Judge.

This matter is before the Court on plaintiff's motion for summary judgment and on Defendant FDIC's objections to plaintiff's affidavits filed in support of its motion. A hearing was held on March 2, 1987. After careful consideration of the parties' briefs and arguments, the Court denies plaintiff's motion in part and grants it in part and overrules defendant's objections to plaintiff's affidavits.

## I. FACTS

This case is an outgrowth of another suit presently pending before this Court, *FDIC v. Christiansen, et al.*, C 85–4217. In that case, the FDIC has sued former directors and officers of the Farmers National Bank of Aurelia, Iowa. The bank closed on June 21, 1984. The FDIC took over as receiver

and executed a purchase-and-assumption transaction.[1] Once this was accomplished, the FDIC in its corporate capacity assumed all unacceptable assets which were not purchased in the transaction. In December 1985, the FDIC in its corporate capacity sued the failed banks directors and officers, alleging negligent acts and omissions with regard to approximately 26 loan files.

The failed bank and its officers and directors had previously purchased a Directors' and Officers' Liability Insurance Policy from American Casualty. The officers and directors had had this policy from February 1979 to February 1981 and from February 1981 to February 1984. However, for the February 1984 to February 1985 renewal policy period, American Casualty included two endorsements which had not been a part of the policy for either of the two previous periods. (*See* Exhibit A, pp. 7–8, attached to Plaintiff's First Memorandum, No. 28 in the Clerk's Memorandum of Papers). Endorsement No. 2 reads as follows:

It is understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any claim made against the Directors or Officers based upon or attributable to any action or proceeding brought by or on behalf of the Federal Deposit Insurance Corporation, the Federal Savings & Loan Insurance Corporation, any other depository insurance organization, the Comptroller of the Currency, the Federal Home Loan Bank Board, or any other national or state regulatory agency (all of said organizations and agencies hereinafter referred to as "Agencies"), including any type of legal action which such agencies have the legal right to bring as receiver, conservator, liquidator, or otherwise; whether such action or proceeding is brought in the name of such Agencies or by or on behalf of such Agencies in the name of any other entity or solely in the name of any Third Party.

Endorsement No. 3 reads as follows:[2]

It is understood and agreed that the Insurer shall not be liable to make any payment for Loss, as defined in Clause 1(d) hereof, which is based upon or attributable to any claim made against Director or Officer by any other Director or Officer or by the Institution defined in Clause 1(a) of the Policy (hereinafter called "Institution"), except for a shareholder's derivative action brought by a shareholder of the Institution other than an Insured.

The directors and officers who are defendants in the *FDIC v. Christiansen* suit demanded that American Casualty defend and provide coverage in the above-named litigation. American Casualty then filed this action, seeking a declaratory judgment that the policy did not provide coverage for the suit against the directors and officers by the FDIC, and that it has no duty to defend in that case. American Casualty filed a motion for summary judgment contending that the clear language of the "FDIC" and "Insured v. Insured" Exclusions precluded coverage and that it therefore had no duty to defend. Defendants FDIC and the individual directors and officers have resisted, arguing that the Exclusions' language is ambiguous and asserting the defenses of reasonable expectations, breach of implied warranty, and unconscionability.

## II. DISCUSSION

### A. Insurance Contracts—General Rules of Construction.

The parties' briefs implicitly concede that Iowa law governs this case. Under Iowa

---

1. When a bank closes, the FDIC has two alternatives. First, it can simply close the bank, liquidate assets and pay off insured depositors, covering any deficiencies with insured funds. The second alternative is the purchase-and-assumption transaction in which the FDIC keeps the bank open, and locates a stable bank to buy the failed bank's acceptable assets. The FDIC must evaluate all the failed bank's assets to determine which are unfavorable, which the FDIC will then assume, and which are acceptable, which the purchasing bank will then buy. For a more complete discussion of the implications under each alternative, *see FDIC v. National Union Fire Ins.*, 630 F.Supp. 1149, 1153–54 (W.D.La.1986).

2. The Court will hereafter refer to Endorsement No. 2 as the "FDIC Exclusion" and Endorsement No. 3 as the "Insured v. Insured Exclusion", as these are the terms which the parties have used.

law, construction of an insurance policy's terms is ordinarily a question of law for the court. *Brammer v. Allied Mutual Ins. Co.*, 182 N.W.2d 169, 172 (Iowa 1970). This is so unless the parties submit extrinsic evidence bearing on the interpretation of a policy's language. *Farm Bureau Mut. Ins. Co. v. Sandbulte*, 302 N.W.2d 104, 108 (Iowa 1981).

As insurance policies are contracts of adhesion, Iowa courts construe their provisions in the light most favorable to the insured. *State Farm Auto. Ins. Co. v. Malcolm*, 259 N.W.2d 833, 836 (Iowa 1977); *Connie's Const. v. Fireman's Fund Ins.*, 227 N.W.2d 207, 210 (Iowa 1975). Exclusions are strictly construed against the insurer, *State Farm, supra* at 836, and the insurer has the burden of proving an exclusion's applicability. *The City of Cedar Rapids v. Northwestern Nat. Ins. Co.*, 304 N.W.2d 228, 230 (Iowa 1981).

The Court must give effect to exceptions or limitations in a policy, and unless an ambiguity exists, a court may not utilize rules of construction and interpretation. *Iowa–Des Moines Nat. Bank v. Insurance Co. of North America*, 459 F.2d 650, 653 (8th Cir.1972); *Hein v. American Family Mut. Ins. Co.*, 166 N.W.2d 363, 366 (Iowa 1969). Ambiguity exists if an exclusion is reasonably susceptible to two meanings. *IMT Ins. Co. v. Amundsen*, 376 N.W.2d 105, 107 (Iowa 1985). In that event, a court will adopt the meaning which affords coverage. *Id.* Mere disagreement on the meaning of a phrase does not establish an ambiguity. *Farm Bureau Mut. Ins. Co. v. Sandbulte*, 302 N.W.2d 104, 108 (Iowa 1981). "The test is an objective one: Is the language 'fairly' susceptible to two interpretations?" *Id.*; *Central Bearings Co. v. Wolverine Ins. Co.*, 179 N.W.2d 443, 445 (Iowa 1970). Neither is an ambiguity created by giving a strained or unnatural meaning to a policy's language. *Hein v. American Family Mut. Ins. Co.*, 166 N.W.2d 363, 366 (Iowa 1969).

### B. Ambiguity.

The Court now turns to the two exclusions American Casualty relies on, to deter-

mine whether they are ambiguous. For ease of discussion, the Court will again set out in full the "FDIC Exclusion":

It is understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any claim made against the Directors or Officers based upon or attributable to any action or proceeding brought by or on behalf of the Federal Deposit Insurance Corporation, the Federal Savings & Loan Insurance Corporation, any other depository insurance organization, the Comptroller of the Currency, the Federal Home Loan Bank Board, or any other national or state regulatory agency (all of said organizations and agencies hereinafter referred to as "Agencies"), including any type of legal action which such Agencies have the legal right to bring as receiver, conservator, liquidator or otherwise; whether such action or proceeding is brought in the name of such Agencies or by or on behalf of such Agencies in the name of any other entity or solely in the name of any Third Party.

American Casualty contends that this exclusion clearly negates coverage for suits against the officers and directors by the FDIC. Defendants argue that this provision is reasonably susceptible to more than one interpretation. Defendants interpret this provision to mean that the policy does not provide coverage for the situation where the FDIC sues a former bank customer, and then the customer sues an officer or director. In other words, defendants contand that this provision applies only to "secondary" suits occasioned by actions brought by the FDIC against third parties, not direct actions by the FDIC.

The Court is persuaded that this is not a strained or unnatural reading of the exclusion's terms. An equally reasonable interpretation apart from American Casualty's is that the words "claim made against the Directors or Officers" does not refer to an action against them by the FDIC. A common occurrence after the FDIC assumes unacceptable assets including promissory notes is that the maker of one of the notes defaults. The FDIC as holder of the note

then sues the maker. Defendants in these actions typically argue as a defense that they had an oral understanding with the bank officer or director that they would only be liable for a restricted period or for an amount other than that listed on the note. Just as typically, the FDIC prevails against this defense, arguing that under *D'Oench Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and 12 U.S.C. § 1823(e), the maker of a note cannot assert such an agreement against the FDIC unless the agreement was part of the failed bank's written records. Therefore, it is not unforseeable that the disgruntled customer having lost in the FDIC suit to recover on his note, would then sue the officer or director who had allegedly given him the oral assurances.

■ If American Casualty had truly intended to exclude coverage for direct actions against the officers and directors by the FDIC, it would have been a simple matter to say so directly, rather than phrasing this exclusion in the cumbersome manner which it has. Therefore, as the Court finds that the "FDIC Exclusion" is reasonably subject to more than one interpretation, plaintiff's motion for summary judgment on this ground is denied.

■ While the Court finds that the "FDIC Exclusion" is ambiguous, it does not find that the same holds true for the "Insured v. Insured Exclusion." The Court will again quote this exclusion for easy reference. The "Insured v. Insured Exclusion" reads as follows:

It is understood and agreed that the Insurer shall not be liable to make any payment for Loss, as defined in Clause 1(d) hereof, which is based upon or attributable to any claim made against any Director or Officer by any other Director or Officer or by the Institution defined in Clause 1(a) of the Policy (hereinafter called "Institution"), except for a shareholder's derivative action brought by a shareholder of the Institution other than a Insured.

American Casualty contends that because the FDIC has "stepped into the shoes of Farmers National Bank, it is seeking to enforce causes of action which belong to the failed bank and that, therefore, this provision applies. Defendant FDIC argues that in the *FDIC v. Christiansen* suit, it is not suing as the bank or its assignee, but as a third-party creditor. The FDIC's complaint in *FDIC v. Christiansen* provides the answer to this problem. Paragraphs 4 and 5 of the FDIC's complaint in *FDIC v. Christiansen* allege:

4. On or about June 21, 1984, this Court entered an Order authorizing the sale of certain assets of the Bank by the FDIC, as receiver, to plaintiff, the FDIC, in its corporate capacity. Among the assets acquired by plaintiff were any and all causes of action and claims against the Bank's directors, officers and/or employees arising out of any act or omission of said directors, officers and/or employees relative to the bank or its property, or arising out of said directors', officers', and/or employees' performance or nonperformance of their respective duties.

5. Plaintiff brings this action in its corporate capacity as the purchaser and assignee of said causes of action and claims.

Thus, the FDIC's own pleadings in *FDIC v. Christiansen* refute its argument made in the case at bar. Nor does the Court find the "Insured v. Insured Exclusion" ambiguous. However, as discussed below, this finding does not necessarily mean that plaintiff's motion for summary judgment should be sustained.

**C. Reasonable Expectations, Breach of Implied Warranty and Unconscionability.**

Even though an exclusion may not be ambiguous, Iowa courts still apply the doctrine of reasonable expectations. *Rodman v. State Farm Mut. Auto. Ins. Co.*, 208 N.W.2d 903, 906 (Iowa 1973). In *Farm Bureau Mut. Ins. Co. v. Sandbulte*, 302 N.W.2d 104 (Iowa 1981), the Iowa Supreme Court explained this doctrine's rationale:

In a contract of adhesion, such as an insurance policy, form must not be exalted over substance, and that the reason-

able expectations of the insured may not be frustrated "even though painstaking study of the policy provisions would have negated those expectations."

*Id.* at 112 (*quoting* Keeton, *Insurance Law—Basic Test* § 6.3(a), at 351 (1971). The reasonable expectation doctrine applies if an exclusion: "(1) is bizarre or oppressive, (2) eviscerates terms explicitly agreed to, or (3) eliminates the dominant purpose of the transaction." *Id.* at 112.

■ This Court believes that a material question of fact is generated on this issue. The affidavits of the defendant officers and directors state that they believed they were fully insured for any negligent acts or omissions occurring during their tenures. American Casualty points out that the affidavits also state that the defendants did not read the policy. Plaintiff then cites *Home Federal Savings & Loan Assoc. v. Campney*, 357 N.W.2d 613, 620 (Iowa 1984), for the proposition that expectations cannot be characterized as reasonable when a person fails to read the policy. However, this Court believes that the above-cited case is distinguishable.

In *Campney*, the issue was whether the mortgagee's expectation that no "due on sale clause" would be included in the mortgage was reasonable. The Iowa Supreme Court answered this question in the negative, holding that the mortgagee's expectation was based on a deliberate failure to read the mortgage, and could therefore not be characterized as reasonable. *Id.* The Court does not believe that the Iowa Supreme Court would extend *Campney* to the insurance situation, as it has already noted that very few insureds even attempt to read and understand their policies. *C. & J. Fertilizer, Inc. v. Allied Mut. Ins. Co.*, 227 N.W.2d 169, 174, 176 (Iowa 1975).

American Casualty also argues that John Christiansen, Jr. had the new exclusions explained to him and that he assented to the renewed policy's terms. However, John Christiansen, Jr.'s affidavit states

that he did not recall ever having such a conversation and that it is extremely doubtful that he would have assented to such provisions had they been explained to him.

The "FDIC Exclusion" and the "Insured v. Insured Exclusion" appear to "eliminate the dominant purpose of the transaction" at least for summary judgment purposes. The defendants' asserted intention in obtaining this policy was to insure that they were covered for claims based on their negligence during office. This is precisely the gist of the FDIC's suit against them. The Court finds that the defendants' reasonable expectations is a material question of fact, and therefore denies plaintiff's motion for summary judgment on the coverage issue.[3]

### D. Duty to Defend.

American Casualty argues that where no coverage exists, there is no duty to defend. This argument fails, as the Court has already determined that a genuine issue of material fact exists as to coverage. However, American Casualty also argues that it is entitled to summary judgment on this issue, as there is no duty to defend clause in the policy. Defendants argue that a reasonable interpretation of Clauses 1(d) and 5 and 6(d) indicates that American Casualty does have a duty to defend. Clause 1(d) provides in part as follows:

The term "Loss" shall mean any amount which the Directors and Officers are legally obligated to pay or for which the Bank is required to indemnify the Directors or Officers, or for which the Bank has, to the extent permitted by law, indemnified the Directors and Officers for Wrongful Acts and shall include but not be limited to damages, judgments, settlements, costs (exclusive of salaries of officers or employees), and defense of legal actions, claims or proceedings and appeals therefrom....

Clause 6(d) reads as follows:

The Bank and the Directors or Officers shall give the Insurer the right to associ-

---

3. As the Court has determined that the doctrine of reasonable expectations precludes summary judgment, it does not believe that a discussion of the remaining defenses of breach of implied warranty and unconscionability is warranted.

However, failure for this Court to comment on these defenses should in no way prevent or restrict assertion of these defenses throughout the remainder of this case.

ate itself in the defense and settlement or any claim that appears reasonably likely to involve the Insurer.

However, Clause 5(c) states:

The Insurer may at its option and upon request, advance on behalf of the Directors or Officers, or any of them, expenses which they have incurred in connection with claims made against them, prior to disposition of such claims, provided always that in the event it is finally established the Insurer has no liability hereunder, such Directors and Officers agree to repay to the Insurer, upon demand, all moneys advanced by virtue of this provision.

■ The Court finds that there is no "immediate" duty to defend under the policy when these clauses are construed together. The words "and defense of legal actions, claims or proceedings and appeals ..." in 1(d) are simply definitions of the word "loss". Clause 5(c) merely provides American Casualty with the discretion to advance defense expenses, but it does not require this. Clause 6(d) is not inconsistent, as it requires the insured to permit the insurer to associate itself in the defense and settlement of claims, but read in conjunction with 5(c), only if the insurer exercises its option to advance defense expenses. The Court notes that two other courts construing almost identical provisions concluded that there was no duty to defend. (*See Clandening v. MGIC Indemnity Corp.* (C.D.Cal. No. 83–2432–LTL May 23, 1983); *Enzweiler v. Fidelity & Deposit Co.*, (E.D.Ky. Civil No. 85–99 May 13, 1986) [Available on WESTLAW, 1986 WL 20444], attached to pleading No. 58 as Fxhibit H). However, this does not foreclose the possibility that American Casualty may eventually be required to reimburse defendants for their expenses in defending the FDIC suit if defendants prevail in the instant action. Therefore, the Court grants plaintiff's motion for summary judgment on the duty to defend issue.

### E. Objections to Affidavits.

The Defendant FDIC has filed objections to American Casualty's affidavits filed in support of its motion for summary judgment. The FDIC argues that some of the facts alleged are not based upon the affiant's personal knowledge and include hearsay statements. At the hearing, the Court indicated it would consider the affidavits as an offer of proof. The offer of proof was granted and the Court did consider the affidavits but gave the hearsay statements no weight, and therefore overrules Defendant FDIC's objections.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment on the coverage issue is hereby denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment on the duty to defend issue is hereby granted.

IT IS FURTHER ORDERED that Defendant FDIC's objections to the plaintiff's affidavits filed in support of its motion for summary judgment are hereby overruled.