**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA,**
Plaintiff,

v.

**Joe G. BAKER, et al., Defendants.**

**No. SA CV 90–125 AHS (RWRx).**

United States District Court,
C.D. California.

Feb. 4, 1991.

Andre E. Jardini, Knapp, Peterson & Clarke, Universal City, Cal.

Richard A. Simpson, Joelle A. Moreno, Ross, Dixon & Masback, Washington, D.C.

Stephen Drummy, Kathleen Carothers Paone, Mark R. Beckington, Drummy, Garrett, King & Harrison, Costa Mesa, Cal., for Joe Sax, William E. Leonard, James C. Roberts, H. Cedric Roberts, Frank Purcell, Jr., Ernest W. Baker and Harold Harris, Jr.

Wayne King, Bill Thompson, Thompson, White, King & Watson, Valencia, Cal., for Bernard Baker.

Mark Weisman, Howard Kern, Weisman, Butler & Watson, Beverly Hills, Cal., for Franklin D. Hartridge.

Dennis Winston, Peter K. Rosen, Lynn Heather Mack, Rosen & Winston, Los Angeles, Cal., for Walker L. Huckaby, John E. Egdahl and Joe D. McCarthy.

Robert A. Peterson, Freidman, Peterson, Walling & Lau, Newport Beach, Cal., for James D. Stroffe.

David A. Sprowl, Paul B. George, McDermott, Will & Emery, Newport Beach, Cal., for Verne F. Potter.

Michael H. Bierman, Robin D. Wierner, Susan M. Walker, Michael J. Mailloux, Tuttle & Taylor, Los Angeles, Cal.

Jay Zybelman, Zybelman, Paluso, Alter, Graham & Sceper, San Diego, Cal., for Peter T. Fletcher.

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

STOTLER, District Judge.

### Procedural History

On August 17, 1990, plaintiff American Casualty Company of Reading, Pennsylvania ("American Casualty") filed its Motion for Summary Judgment on two claims in its action for declaratory relief, contending that insurance coverage does not exist for officers and directors against whom claims are pending in the underlying action entitled *Federal Deposit Insurance Corporation, etc., et al. v. Joe G. Baker, et al.*, 739 F.Supp. 1401. The Court grants the Request for Judicial Notice and hereby takes notice of the underlying case. Certain proceedings in that case are reported in *FDIC v. Baker, et al.*, 739 F.Supp. 1401 (C.D.Cal. 1990). Counterdefendant Continental Casualty Company ("Continental Casualty") filed a like motion as to policies referenced in the counterclaim brought by the Resolution Trust Corporation, Acting Through Its Managing Agent The Federal Deposit Insurance Corporation ("RTC/FDIC"), defendant-intervenor.

On September 17, 1990, opposition was filed by the RTC/FDIC, defendant Fletcher, and defendants Egdahl, Huckabay, and McCarthy. Various defendants joined in the opposition of other defendants. A consolidated reply was filed by the insurers on October 1, 1990. Sur-replies were received from the RTC/FDIC and defendant Egdahl on October 9, 1990, and certain defendants joined in these filings.

On August 17, 1990, the RTC/FDIC filed its Motion for Partial Summary Judgment, supported by the Declaration of E.T. Wilcher and a Request for Judicial Notice. The balance of the Request for Judicial Notice is granted, the Court hereby noticing Exhibits A through G attached to the Request. This motion was not opposed by the co-defendants and was joined in by several. American Casualty and Continental Casualty (also called the "CNA parties") filed opposition on September 18, 1990; RTC/FDIC replied on October 1, and the insurers filed sur-replies on October 9, 1990.

Oral argument was heard on October 29, at which time the Court called for additional briefing by the RTC/FDIC and the insurers. On November 5 and 14, 1990, respectively, the supplemental memoranda were filed.

By this order, the Court determines that insurance coverage is excluded by the "regulatory exclusion" provision of the policies in issue, but that insurance is not precluded under the "insured vs. insured" provision. The Court also schedules a Mandatory Status Conference for February 25, 1991, at 11 a.m. and directs the parties to comply with Local Rule 6.4.2.

*Overview*

The action initiated by American Casualty seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, concerning the rights and obligations of the parties under certain directors' and officers' liability insurance policies issued to Pacific Savings Bank ("Pacific"), in regard to various claims asserted against certain former directors and officers of Pacific in the underlying action described above. The counterclaims seek the same adjudication as to the other policies.

American Casualty issued the following policies to Pacific: Directors' and Officers' Liability Insurance Policy Including Savings & Loan Reimbursement No. ZED–000709551 (policy period 12/4/87–12/4/88, extended to 1/21/89) (the "1987–1988 Policy") and Directors' and Officers' Liability Insurance Policy Including Savings & Loan Reimbursement No. ZED–709551 (policy period 12/4/86–12/4/87) (the "1986–1987 Policy"). Copies of the policies ("Policies") (except documents submitted as part of the applications for the Policies) are annexed to the Complaint as Exhibits A and B, respectively. Subject to all applicable policy terms and conditions, the Policies provide certain insurance coverage for "Loss" sustained in connection with claims made against directors and officers of Pacific.

By virtue of the counterclaims, a total of five (5) policies are now in issue. In addition to those above, there are American Casualty Directors' and Officers' Liability Insurance Policy for Savings and Loan Associations Including S & L Reimbursement No. 709551 (policy period 12/4/85–12/4/86) (the "1985–1986 Policy"); MGIC Indemnity Corporation Directors' and Officers' Liability Policy For Savings and Loan Associations Including S & L Reimbursement No. DO–5455–6 (policy period 9/23/83–12/4/85), which was assumed by Continental Casualty (Endorsement No. 20); and MGIC Indemnity Corporation Directors' and Officers' Liability Policy for Savings and Loan Associations Including S & L Reimbursement No. DO–5455–6 (policy period 9/26/80–9/26/83). Copies of all five Policies were submitted as Exhibits A–E, respectively, annexed to the Declaration of Roger W. Novak.

American Casualty alleges that it has advised the insureds that there is no coverage for the claims on the following independent grounds: (1) Endorsement No. 7 to the 1987–1988 Policy (which is identical to Endorsement No. 6 of the 1986–1987 Policy) bars coverage for any claim brought by or on behalf of the Federal Deposit Insurance Corporation; (2) Endorsement No. 12 to the 1987–1988 Policy (which is identical to Endorsement No. 11 to the 1986–1987 Policy) bars coverage because FDIC seeks to enforce causes of action that belonged to Pacific; and (3) no claim was made and no adequate notice of potential claim was provided to American Casualty prior to the expiration of the 1987–1988 Policy. Continental Casualty asserts the same grounds as to the same exclusion provisions, to the extent they are found therein, in its policies.

Pursuant to the stipulation and Order, filed June 25, 1990, the instant motions are limited to interpretation and application of the Regulatory Exclusion and the Insured vs. Insured Exclusion. In the same stipulation, the parties agreed that no discovery was to be taken until the Court ruled on American Casualty's motion for summary judgment. Continental Casualty, although not a signatory to the stipulation, agreed to be bound by the Court's ruling on these issues. (Decl. of Susan Walker.) In this Order, the Court expressly does not decide additional issues raised by the parties concerning assumption of policies, waiver, or notice to defendant officers and directors of changes in the policy provisions. As to objections filed by the RTC/FDIC, the Court now sustains those objections directed to the Declaration of Mr. Dahlstrom for the reasons cited by RTC/FDIC and primarily because it is irrelevant to the issues addressed in this Order. The objections are overruled as to the Declaration of Mr. Novak for the purpose of these motions in order that the Court may consider the full text of the exclusionary provisions contained in the policies.

The insurance companies contend that there is no coverage under the Policies for the RTC/FDIC Action because the Regulatory Exclusion expressly provides that the Insurer:

> shall not be liable to make any payment for Loss in connection with any claim made against the Directors or Officers based upon or attributable to: any action or proceeding brought by or on behalf of the Federal Deposit Insurance Corporation, the Federal Savings & Loan Insurance Corporation, any other depository insurance organization, the Comptroller of the Currency, the Federal Home Loan Bank Board, or any other national or state regulatory agency (all of said organization and agencies hereinafter referred to as "Agencies"), including any type of legal action which such Agencies have the legal right to bring as receiver, conservator, liquidator or otherwise; whether such action or proceeding is brought in the name of such Agencies or by or on behalf of such Agencies in the name of any other entity or solely in the name of any Third Party.

The Insured v. Insured Exclusion bars coverage for Loss:

> which is based upon or attributable to any claim made against any Director or Officer by any other Director or Officer or by the Institution defined in Clause 1(a) of the policy, except for a shareholders derivative action brought by a shareholder of the Institution.

The RTC/FDIC and the other defendants who are named in the underlying action assert four grounds in support of coverage: (1) that the RTC/FDIC is not a regulatory agency; (2) that the "based upon or attributable to" language means that the exclusion only applies to suits instituted secondarily as the result of initial litigation brought by RTC/FDIC; (3) that enforcement of the regulatory exclusion violates public policy in that Congress' enactment of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101-73 (Aug. 9, 1989) ("FIRREA") shows its intent to redeem failing institutions and to minimize the public bil-lion dollar bail-outs; and, (4) that the RTC/FDIC does not stand in the shoes of the failed institution but represents shareholders, creditors, and depositors and hence does bring suit as an "insured." Analysis and discussion of the parties' contentions follow.

## I.

## THE REGULATORY EXCLUSION

### (1) *The RTC as a Regulatory Agency*

■ The RTC/FDIC argues that it does not qualify as a regulatory agency under the Regulatory Exclusion because its role under FIRREA differs from the responsibilities that the FDIC and FSLIC discharged pre-FIRREA. First, the RTC is not named in the exclusionary provisions. Second, it, unlike the FDIC and FSLIC, is not a "depository insurance organization". In addition, the RTC does not supervise or regulate *solvent* financial institutions. This duty has been assigned to the Office of Thrift Supervision ("OTS") pursuant to FIRREA. *See* 12 U.S.C. §§ 1462, 1463, 1813(q)(4), 1818. The RTC claims that its primary function is to manage and resolve all cases involving associations that were insured by FSLIC pre-FIRREA, and which failed in the years preceding the enactment of FIRREA or failed in the three years following enactment of FIRREA. *See* 12 U.S.C. § 1441a(b)(3)(A). In other words, the RTC claims that since it is concerned only with insolvent institutions and the OTS deals with regulating solvent institutions, the RTC cannot be considered a regulatory agency.

American Casualty argues that the policies must be read as a layman would read them and not as they might be analyzed by an attorney or an insurance expert. *See Reserve Insurance Co. v. Pisciotta*, 30 Cal.3d 800, 807, 180 Cal.Rptr. 628, 640 P.2d 764 (1982); *Equitable Life Assurance Soc'y v. Berry*, 212 Cal.App.3d 832, 839, 260 Cal.Rptr. 819 (1989). First, the insurance companies contend that the RTC is a regulatory agency. Second, and assuming that RTC does regulate only *insolvent* institutions, there is nothing in the common

understanding of the concept of a "regulatory agency" that restricts this term to the regulation of solvent institutions. Third, the RTC/FDIC ignores the controlling language of the policies. They emphasize that the Regulatory Exclusion specifically enumerates all federal agencies known to be involved in regulation of solvent and insolvent banks and thrifts at the time the parties entered into the contracts. In their view, it is inconceivable that the RTC would not have been included in the Regulatory Exclusion if the parties had known about RTC when they entered into the insurance agreements.

### (2) Secondary Suits

RTC also claims that it is exempt because the Regulatory Exclusion only applies to "secondary suits"—i.e., suits brought by third parties against the insured following an initial suit brought by the RTC. To support this position, RTC emphasizes that the Regulatory Exclusion applies to claims "based upon or attributable to" proceedings initiated by regulatory agencies.

In addition, RTC argues that if the language in the Regulatory Exclusion is ambiguous as to whether the RTC is exempt under its "secondary suit" argument, the Court must resolve the ambiguity against the insurer and in favor of coverage. *See Reserve Ins. Co. v. Pisciotta,* 30 Cal.3d 800, 807–808, 180 Cal.Rptr. 628, 640 P.2d 764 (1982). To support its "secondary suit" argument, RTC relies on *American Casualty Company of Reading, PA. v. FDIC,* 677 F.Supp. 600, 603–604 (N.D.Iowa 1987) ("*American Casualty Iowa*").

In *American Casualty Iowa,* the FDIC, in its corporate capacity, sued former directors and officers of Farmers National Bank of Aurelia, Iowa, for alleged negligent acts and omissions with regard to approximately 26 loan files. The directors and officers had previously purchased a Directors' and Officers' Liability Insurance Policy from American Casualty which contained a Regulatory Exclusion clause identical to the clause at issue in this lawsuit. American Casualty moved for summary

judgment partially on the ground that the Regulatory Exclusion negates coverage for suits against the officers and directors by the FDIC. The court explained the FDIC's argument thus: "Defendants interpret this provision to mean that the policy does not provide coverage for the situation where the FDIC sues a former bank customer, and then the customer sues an officer or director. In other words, defendants contend that this provision applies only to 'secondary' suits occasioned by actions brought by the FDIC against third parties, not direct actions by the FDIC." *Id.,* at 603.

The court denied American Casualty's motion as it related to the Regulatory Exclusion. In accepting the FDIC's argument that such a reading was neither strained nor unreasonable, the court held that since the clause was reasonably susceptible to more than one interpretation, the court must adopt the meaning which affords coverage. *Id.* at 603–604. The court reasoned that "if American Casualty had truly intended to exclude coverage for direct actions against the officers and directors by the FDIC, it would have been a simple matter to say so directly, rather than phrasing the exclusion in the cumbersome manner which it has." *Id.* at 604.

RTC/FDIC also relies on *FSLIC v. Mmahat,* No. 86–5160, 1988 WL 19304, 1988 U.S.Dist. LEXIS 1825 (E.D.La. Mar. 3, 1988). In *Mmahat,* the court came to the same conclusion, namely, that the regulatory exclusion clause was ambiguous because it was susceptible to the interpretation urged here. The court cited with approval to *American Casualty Iowa,* but, as discussed below, this reliance was misplaced.

American Casualty challenges RTC's "secondary suit" argument by asserting that the Regulatory Exclusion unambiguously excludes coverage for *any* claim based on *any* action or proceeding by the FDIC, regardless of the capacity in which the action is brought. In support of its argument, American Casualty cites to *Continental Casualty Co. v. Allen,* 710 F.Supp. 1088, 1097 (N.D.Tex.1989) and *American Casualty Co. v. FDIC,* Civil Ac-

tion No. 86–4018, 1990 WL 66505 (N.D. Iowa, Feb. 26, 1990) ("*American Casualty Iowa II*").

In *Allen*, the defendants were officers and directors of the failed Seminole National Bank. The officers and directors were insured by plaintiff and their policy included a Regulatory Exclusion clause. However, the clause excluded coverage for actions "brought by or on behalf of the FDIC, FSLIC, etc." It did not contain the "based on or attributable to" language found in the policies under study. *Allen*, 710 F.Supp. at 1097. The court rejected defendants' claim of ambiguity and adopted the "obvious, reasonable" interpretation of the language which clearly excluded suits by FDIC. *Id.* at 1097.

The court in *American Casualty Iowa II* reconsidered and reversed its earlier decision that the Regulatory Exclusion clause was ambiguous. The court emphasized that the FDIC understood the meaning of the exclusion and held that it "need not consider evidence relating to the Regulatory Exclusion because the exclusion clearly excludes claims by FDIC and is not ambiguous." *American Casualty Iowa II*, at 30.

Since these motions have been pending, a new case was decided which American Casualty brought to the Court's attention by its filing dated January 7, 1991, entitled "Notice of New Decision" to which was attached *Gary v. American Casualty Company of Reading, PA.*, 753 F.Supp. 1547 (W.D.Okla.1990). In *Gary*, the FDIC intervened and filed a cross-motion for summary judgment. The parties disputed American Casualty's liability under a Regulatory Exclusion supposedly identical to the one at issue here. In a supplemental memorandum filed January 17, 1991, the RTC/FDIC distinguishes *Gary* because the language of the policy is not identical, different public policy arguments were advanced, and because the RTC/FDIC was not involved in *Gary*. In the RTC/FDIC's view, the summary judgment motions here were brought under a unique procedural circumstance since the parties agreed to

conduct no discovery during the pendency of the motions.

The court in *Gary* rejected FDIC's "secondary suit" argument finding the FDIC's interpretation to be "strained and unreasonable". *Id.* at 1550. The Court held that it was clear that the insured's intent was to exclude coverage for any loss resulting from any action brought by or on behalf of the FDIC in any capacity against a bank director or officer. *Id.* at 1550–1551.

### (3) *Public Policy*

The RTC/FDIC, and especially the Egdahl defendants, argue that the Regulatory Exclusion cannot be enforced because it violates a public policy which mandates that the federal government minimize losses from a national savings and loan crisis. The Egdahl defendants support their public policy argument by citing to *FSLIC v. Oldenburg*, 671 F.Supp. 720 (D.Utah 1987). In *Oldenburg*, Federal Insurance Company ("Federal") filed a motion to dismiss FSLIC's complaint. Federal argued that a regulatory exclusion barred any claim made by FSLIC. FSLIC, as the receiver of State Savings' assets, transferred the insurance policy at issue to FSLIC in its corporate capacity. The court denied Federal's motion to dismiss on the grounds that there is a strong public policy that FSLIC, as receiver, has all the rights and claims that State Savings would have had.

The Egdahl defendants also cite to *Branning v. CNA Insurance Cos.*, 721 F.Supp. 1180, 1184 (W.D.Wash.1989). In *Branning*, the court held that a regulatory exclusion substantially hindered FSLIC's exercise of federal powers and was therefore contrary to federal policy. The defendants also point out that this Court relied on the public policy behind the enactment of FIRREA in striking affirmative defenses in the underlying action. *See FDIC v. Baker*, 739 F.Supp. at 1406.

American Casualty relies on *FDIC v. Aetna Casualty and Surety Company*, 903 F.2d 1073 (6th Cir.1990). In *Aetna*, the underlying suit was premised on Aetna's refusal to allow FDIC, as receiver for United Southern Bank of Nashville (USBN), to

claim coverage under certain bankers bonds. The bonds provided coverage for losses caused by dishonest acts of employees. The bonds contained a clause which stated that the bond would be deemed terminated immediately upon the taking over of the insured by a receiver or other liquidator or by state or federal officials. The FDIC tried to recover on the bonds, but Aetna refused to pay.

The Sixth Circuit rejected FDIC's argument that enforcing the clause violated public policy. The court stated the standard for determining whether the exclusion violated public policy by quoting *Muschany v. United States*, 324 U.S. 49, 66, 65 S.Ct. 442, 89 L.Ed. 744 (1944), "public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.... As the term public policy is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy." The *Aetna* court noted that 12 U.S.C. § 1821(e)(12)(A) states that the "receiver may enforce any contract, other than a director's or officer's liability insurance contract or a depository interest bond, notwithstanding any provision of the contract providing for termination ... of rights upon ... insolvency or the appointment of a conservator or receiver." *Aetna*, 903 F.2d at 1078. The court held that this statute did not provide the basis for a "dominant public policy" which would justify voiding the exclusion. *Id.* at 1078. The court concluded by stating that "the dominant public policy exposed by this review is that the parties' freedom to contract not be disturbed. *Id.* at 1078.

### (4) *The Regulatory Exclusion Applies to RTC/FDIC*

In its supplemental memorandum, the RTC/FDIC provides an excellent statutory overview of the changes made by FIRREA. It traces the historical duties of the Federal Reserve Board, the Office of the Comptroller of the Currency, the FDIC, the Federal Home Loan Bank Board, and the FSLIC. The Court has previously acknowledged the "massive overhaul" effected by FIR-

REA. *See FDIC v. Baker, et al.*, 739 F.Supp. at 1406. According to the RTC/FDIC's reading, the division of labor derived from the abolition of the FHLBB and the FSLIC between the FDIC and the Office of Thrift Supervision demonstrates that while the FSLIC was admittedly a regulatory agency, the RTC is not.

The CNA parties have the stronger side of this argument, however. The RTC replaced FSLIC as conservator or receiver for failed thrifts. *See* 12 U.S.C. Sec. 1441a(b)(3) ("The duties of the Corporation [RTC] shall be to carry out a program ... (A) To manage and resolve all cases involving depository institutions—(i) the accounts of which were insured by the Federal Savings and Loan Insurance Corporation ...; and (ii) for which a conservator or receiver —(I) had been appointed ..."). As the insurance companies point out, when the underlying action was instituted in 1989, it was done by the FDIC acting as the Managing Agent for the FSLIC.

The FDIC, also specifically named in the exclusion clause, was the FSLIC's manager then, and it now is the exclusive manager of the RTC; it provides the employees to carry out the RTC's functions; and, it will replace the RTC as receiver and conservator when the RTC is terminated which, according to the current legislation, will be not later than December 31, 1996. It is illogical, say the insurance companies, to conclude that the policy exclusion does not extend to the new agency, created as part of a reorganization of federal regulation of the industry, that has assumed functions previously performed by one agency named in the exclusion, FSLIC, and is essentially controlled by another agency named in the exclusion, FDIC. Lastly, the CNA parties remind us that the policy exclusion also expressly states that no coverage is available for "any type of legal action which such Agencies have the legal right to bring as receiver, conservator, liquidator or otherwise."

■ Words used in an insurance policy are to be interpreted according to the plain meaning which a layman would ordinarily

attach to them. *See Reserve Insurance Co. v. Pisciotta,* 30 Cal.3d 800, 807, 180 Cal.Rptr. 628, 640 P.2d 764 (1982); *Equitable Life Assurance Soc'y v. Berry,* 212 Cal.App.3d 832, 839, 260 Cal.Rptr. 819 (1989). Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists. *Id.* The Court agrees with the construction urged by the insurance companies. Their reading of the regulatory exclusion is both natural and reasonable. There is no ambiguity to the language of the clause and the RTC/FDIC's submissions do not make it so. Only the "secondary suit" limitation, offered by the RTC/FDIC, creates strain on the contractual provision in issue.

The public policy arguments are answered by the analysis of the Sixth Circuit in *Aetna.* There is no statute, including various provisions of FIRREA, which expressly invalidates the exclusionary clauses in director and officer liability policies. All parties agree that Congress discussed invalidating regulatory exclusions in directors and officers liability insurance contracts when it enacted FIRREA, and that Congress refused to do so. The Egdahl defendants claim that Congress remained neutral in order to allow the law to develop, while the insurance companies contend that Congress affirmatively exempted those contracts because it did not consider any public policy concerns to be sufficiently important to require other action. Section 1821(e)(12)(A), discussed in *Aetna,* allows receivers to enforce contracts regardless of termination contingency exclusions, but expressly exempts director and officer liability contracts.

It seems illogical to conclude that enforcement of the Regulatory Exclusion would violate public policy in the face of a congressional enactment which provides for the receiver's enforcement of any contract, except a director's or officer's liability insurance contract (and a depository institution bond). Under *Muschany,* there must be definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy. *Muschany,* 324 U.S. at 66, 65 S.Ct. 442, 451, 89 L.Ed. 744. Since there are no such definite indications in the law, the parties' right to contract must not be disturbed.

The Egdahl defendants attempt to distinguish *Muschany* on the grounds that *Muschany* involved a government contract, not a private contract. This argument is unavailing since the *Muschany* standard has been employed by the Supreme Court in analyzing private contracts. *See e.g., United Paperworkers International v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *W.R. Grace & Co. v. Local Union 759,* 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983).

Two lesser but noteworthy contentions buttress the insurance companies' position. In its supplemental memo, the RTC/FDIC contends that Congress did not envision the RTC as a regulatory agency, citing Title 12 U.S.C. Sec. 3332(a) (1990) which shows that Congress added in the RTC after "regulatory agencies," suggesting that the former was not already included in the latter. Congress apparently viewed the RTC differently when it forwarded Senate Bill 3266 (Crime Control Act of 1990, 101st Cong., 2nd Sess., 136 Cong.Rec.Sec. 18301–52 (Daily ed. Nov. 2, 1990)) (attached as Exhibit C to the CNA parties' supplemental memo) for presidential signature. Section 2725(a)(2) thereof refers to "the Resolution Trust Corporation, the Federal Deposit Insurance Corporation, or any other Federal financial institution regulatory agency ...". This statute and others (*e.g.,* 12 U.S.C. § 1818(e)(7)(D)(v); 12 U.S.C. § 1441a(a)(5)(E)) cited by the CNA parties, show that Congress has swept the RTC into a regulatory agency category. As was suggested at oral argument, the statutory handiwork governing the nation's financial institutions may not be consistent. Congressional custom in dealing with the subject does not justify the significance the RTC/FDIC attributes to it.

Finally, the RTC/FDIC has been deemed a regulatory agency in other settings. In the Eighth Circuit, the RTC fought to preserve its regulations concerning retention and operation by acquiring banks of the offices of savings associations acquired under a particular regulation. *Arkansas*

*State Bank Com'r v. Resolution Trust,* 911 F.2d 161 (8th Cir.1990). After detailing the predicament of two failed savings and loans, the court noted that the activity in Arkansas "coincided with action on the regulatory front." *Id.* at 163. The court then discussed the RTC's authority to adopt the regulation and ultimately upheld it.

Although acknowledging in briefs before this Court its "broad rule-making authority," the RTC argued in its submission to the District Court for the Eastern District of Missouri that it was a regulatory agency. Said the RTC: "the *D'Oench* doctrine protects a federal financial regulatory agency from schemes, arrangements, or agreements not apparent on the face of loan documents ...". *Oliver v. Sooner Federal Savings & Loan Association, et al.,* Civil Action No. 89–1929–C–1 (April 9, 1990). The RTC continued: "This doctrine has been applied not only to FDIC but also to *FSLIC and RTC, as regulators of the thrift industry.*" (Exhibit D, Supplemental Memorandum for plaintiff and counterdefendants.)

The RTC/FDIC tells the Court that it should either deny American Casualty's motion or delay a ruling indefinitely until the parties have had an opportunity to discover whether extrinsic evidence sheds any light on the intent of the parties. This argument is premised on the stipulation suspending all discovery until the Court has ruled on American Casualty's summary judgment motion. The RTC/FDIC asserts that the decisions in *American Casualty Iowa II* and *Continental Casualty Co. v. Allen* did not hold that the regulatory exclusion at issue was unambiguous until after trial and after considering extrinsic evidence. However, in *American Casualty Iowa II,* the court expressly stated that "the Court need not consider evidence relating to the regulatory exclusion because the exclusion clearly excludes claims by FDIC and is not ambiguous." *Id.* at 30. Moreover, in *Gary v. American Casualty Co.,* 753 F.Supp. 1547 (W.D.Okla.1990), the court ruled that the FDIC's construction of "based on or attributable to" was strained and unreasonable and so found simply by reading the endorsement—the Court did

not base its reasoning on extrinsic evidence. *Id.* at 1550. Accordingly, the Court need not wait to consider extrinsic evidence before deciding this issue.

The language of the policies, the case law, the statutory framework—inconclusive because inconsistent—, and the logic of the arguments made by the insurance companies persuade the Court that the Regulatory Exclusion applies to the RTC/FDIC and therefore excludes from insurance coverage the officers and directors named in the underlying action.

## II.

### INSURED v. INSURED EXCLUSION

■ The CNA parties argue that the insured v. insured exclusion unambiguously bars coverage for suits by regulatory authorities when they assert claims belonging to the institution. To support its claim, American Casualty relies on *Mt. Hawley Insurance v. FSLIC,* 695 F.Supp. 469 (C.D. Cal.1987). The Mt. Hawley Insurance Company issued an officers' and directors' liability policy to defendant Consolidated Bank ("CSB"). The bank was subsequently closed by the Federal Home Loan Bank Board and FSLIC filed suit in its capacity as receiver. The insurance company argued that the insured v. insured exclusion barred coverage of the officers and directors because the FSLIC brought the suit as receiver for CSB. The court adopted this position stating that it found this reading of the exclusion to be both natural and reasonable. *Id.* at 481. The court stated that "FSLIC 'stands in the shoes' of CSB. CSB is only able to bring an action through its receiver; its officers and directors can no longer sue on its behalf." *Id.* at 482.

American Casualty also relies on *Gary v. American Casualty Company of Reading, PA.,* 753 F.Supp. 1547 (W.D.Okla. 1990). In *Gary,* the court cited *Mt. Hawley* with approval and held that the insured v. insured exclusion barred coverage because the FDIC was "standing in the shoes" of the bank in prosecuting the claims. *Id.* at 1554. In *Gary,* the FDIC admitted that its claims against the bank's

officers and directors are assets of the bank which the FDIC in its corporate capacity purchased from the FDIC as Liquidating Agent. *Id.* at 1554. The court rejected FDIC's claim that the exclusion was ambiguous because the FDIC could also assert claims on behalf of shareholders and creditors. The court stated that it was clear that based on the facts of that case, the FDIC was not proceeding on behalf of any shareholders or creditors, but only on behalf of the bank. *Id.* at 1553–1554.

The RTC/FDIC attacks American Casualty's reliance on *Mt. Hawley* as misplaced because the insured v. insured exclusion differed substantially from the exclusion in this case. In *Mt. Hawley*, the exclusion read: "... the insurer shall not be liable to make any payment in connection with any claim or suit, including but not limited to shareholders' derivative suits and/or representative class action suits, brought by one or more past, present or future Directors and/or Officers including their estates, beneficiaries, heirs, legal representatives, assigns and/or the company ...". Therefore, the exclusion expressly named the insureds' assigns and expressly excluded the shareholders derivative suit exception. *See Mt. Hawley*, 695 F.Supp. at 481. RTC/FDIC claims these distinctions are crucial because the Court must focus on the *identity* of the party asserting the claim, not on the *nature* of the cause of action. Here, the exclusion excludes coverage only for claims made against insured directors and officers that are asserted by "any other Director or Officer or by the Institution ..., except for a shareholders derivative action brought by a shareholder of the Institution." RTC/FDIC argues that since it represents depositors, creditors, and shareholders, in addition to representing Pacific, it cannot be held to be merely asserting the claims of the institution and thus the insured v. insured exclusion should not bar coverage.

To support its position, RTC/FDIC relies on *Fidelity and Deposit Company of Maryland v. Zandstra*, 756 F.Supp. 429 (N.D. Cal.1991). The exclusion in *Zandstra* was identical to the exclusion at issue here. In *Zandstra*, plaintiff sought a declaration that it had no duty to defend or indemnify the defendants, officers and directors of Homestate Savings and Loan Association. Defendants were initially sued by Homestate, but the suit was later maintained by the FDIC. Plaintiff moved for summary judgment.

The court held that even though the insured v. insured exclusion would apply if Homestate was litigating the suit, it did not apply when the FDIC took over the litigation because the FDIC was not an insured and did not "stand in the shoes" of an insured due to its obligations to shareholders, creditors, and depositors. *Id.* at 431–33.

RTC/FDIC also relies on other cases which have held that identical insured v. insured exclusions do not bar coverage when the RTC/FDIC/FSLIC sues the officers and directors of a failed institution. *See Branning v. CNA Ins. Co.*, 721 F.Supp. 1180, 1184 (W.D. Wash.1989) ("the Court finds, however, that FSLIC does not merely stand in the shoes of Home Savings. By statute, FSLIC represents depositors, shareholders, creditors, and the federal insurance fund as well as the failed institution. The Court rules therefore that since endorsement 6 does not exclude claims brought on behalf of shareholders, creditors, and the insurance fund, FSLIC's claims are covered. To rule otherwise would frustrate the purpose of the agency as well as its ability to revive failed savings and loans."); *American Casualty Company of Reading, PA. v. FDIC*, 713 F.Supp. 311, 316 (N.D.Iowa 1988) ("Courts which have analyzed the role of FDIC corporate have recognized for over forty years that FDIC does not strictly 'step into the shoes' of a failed bank.").

On this issue, the Court adopts the sound reasoning of Judge Schwarzer in *Zandstra*. He found the existence of the exception for shareholder derivative actions in the "insured v. insured" exclusion dispositive. *Id.* at 431 (Exhibit C to RTC/FDIC Request for Judicial Notice). The court reasoned that the exception demonstrated the insurer's intent to place on itself the risk for actions against the directors and officers

**1350**

based upon allegations of mismanagement, waste, fraud, or abuse of the failed institution—precisely the claims brought by the FDIC against the officers and directors. Judge Schwarzer observed that the obvious intent behind the insured v. insured exclusion is to protect the insurer against collusive suits among the failed institution and its directors and officers. He also concluded, correctly, that "there can be no real dispute that FDIC is a genuinely adverse party to the defendant officers and directors." As an alternative ground, the *Zandstra* court also found that the FDIC maintained greater standing than the failed institution, authorized to bring suit not only as its successor, but as a creditor itself, on behalf of the creditors and shareholders of the institution, and as subrogee to the rights of depositors. The dual rationale of *Zandstra* applies equally to this case. Accordingly, the Court declines to apply the insured v. insured exclusion in the CNA parties' favor.

### Conclusion

For the foregoing reasons, the Court grants the plaintiff's motion for summary judgment insofar as it, and counterdefendant Continental Casualty, seek to exclude the officers and directors from insurance coverage in the underlying action based on the Regulatory Exclusion contained in the policies. The insurers' motions are denied insofar as they seek to avoid coverage liability based on the Insured v. Insured Exclusion. The RTC/FDIC's and other moving defendants' motions are denied as to a favorable interpretation and application of the Regulatory Exclusion, but granted as to the Insured v. Insured Exclusion.

IT IS SO ORDERED.